UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **GERRY DONNELLY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | **Case No. 08-CV-2148** |
| ) | |
| **CORVEST PROPERTY TRUST, a/k/a** ) | |
| **RM REALTY GROUP, RM REALTY** ) | |
| **GROUP, HOWARD AND MILLS, INC.,** ) | |
| **and B&G MANAGEMENT COMPANY,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION**

Plaintiff, Gerry Donnelly, filed his Complaint (#1) against Defendants Corvest Property Trust (aka RM Realty Group), RM Realty Group, Howard and Mills, Inc., and B&G Management Company on July 1, 2008. In Count I, Plaintiff alleges he was improperly terminated in violation of the Age Discrimination in Employment Act (ADEA) (29 U.S.C. § 621 eq seq.). In Count II, Plaintiff alleges that he was improperly terminated so as to deprive him of continued participation in Defendants' employee welfare and benefit plan under the Employee Retirement Income Security Act (ERISA) (29 U.S.C. § 1132 et seq.). Defendants filed their Amended Motion for Summary Judgment (#38) on November 23, 2009.[1] All responses and replies have been filed and the motion is ready for ruling. For the following reasons, Defendants' Amended Motion for Summary

---

[1] Defendants' filed their original Motion for Summary Judgment (#37) on November 23, 2009. The same day they filed this Amended Motion for Summary Judgment (#38). The court considers the original motion (#37) to have been superseded and rendered moot by the Amended Motion (#38).

Judgment (#38) is DENIED.

## BACKGROUND FACTS

### Overview

Plaintiff was employed as the mall manager at the Village Mall in Danville, Illinois. He was 64 years old when, on January 4, 2007, he was terminated from his position. Plaintiff believes his termination to be wrongful and a violation of the ADEA, as he alleges was replaced by someone younger and less qualified. Defendants argue that Plaintiff has no ADEA claim because the company he worked for, Corvest Property Trust, employed less than the required twenty employees to qualify as an employer under the ADEA. Plaintiff counters that he did not just work for Corvest, but also for RM Realty Group, Howard and Mills, Inc., and B&M Management Company, and that these entities owned and ran the Village Mall. Plaintiff argues that all the named entities could be considered his joint employers, or also that they are in actuality a single entity, and that they are only split up into different entities so as to avoid federal discrimination laws. When the total number of employees between them is added up, it equals more than twenty, and thus Defendants qualify as an employer under ADEA.

### Plaintiff-Deposition Testimony

Plaintiff was General Manager of the Village Mall. At the time of Plaintiff's termination in 2007, his employee handbook was the Corvest Property Trust employee handbook. He did not use any other handbook. He received his paychecks only from Corvest Property Trust. However, while Plaintiff was mall manager, RM Realty was managing and leasing the mall. RM Realty owned and maintained Corvest Property Trust. RM Realty was run by Robert Mills.[2] Plaintiff stated that

---

[2]There are three separate, unrelated people with the last name "Mills" involved in this case: Robert Mills, of RM Realty, David Mills of Howard and Mills, Inc., and Jeff Mills, of Howard and Mills, Inc. To avoid confusion, they will either be referred to by their first or full

2

Robert Mills maintained the Corvest Property Trust entity because "it was already there and he could use it." At some point during 2006 the Village Mall was sold to Howard and Mills, Inc.

Plaintiff was terminated on January 4, 2007, via e-mail. David Mills of Howard and Mills, Inc., sent Plaintiff the e-mail. After being fired, Plaintiff was telephoned by Robert Mills. Robert Mills told Plaintiff, regarding the firing, "don't pay attention to it" and that they could not fire Plaintiff because Plaintiff was "his" (meaning Robert Mills's employee) employee and not "theirs" (meaning Howard and Mills, Inc.,'s employee). Mills told Plaintiff that "they couldn't fire" him "[b]ecause [Plaintiff] didn't work for them." Plaintiff told Mills that was fine but he was still going to clean out his desk. Mills called Plaintiff later that day and said "he couldn't get ahold of anybody, but he would call [Plaintiff] Monday." Mills called Monday and told Plaintiff "there wasn't anything he could do." Plaintiff was never told why he was fired.

David Mills- Deposition Testimony

David Mills served as Project Manager for Howard and Mills, Inc., up until September 2007 (in September 2007 Howard and Mills became B&G Management, and David Mills continued to work for B&G). While working for Howard and Mills he answered to the company's owners, Brett Howard and Jeff Mills. As Project Manager, he inspected and visited the Village Mall. In that capacity, he testified that he could not promote, fire, hire, or assign job tasks to mall employees.[3] David Mills was generally aware of what was happening tenancy-wise and property upkeep-wise

---

name.

[3] It is not quite clear how much authority David Mills had at the Village Mall, but it does appear he had considerable influence in personnel matters. For example, David told Robert Mills not to give Plaintiff a bonus, but testified that he had no authority to tell Robert that. Rather, it was a "recommendation." Whatever the case, when David told Robert not to give Plaintiff a bonus, Plaintiff was denied a bonus. On another occasion, David gave bonuses to Massengil and Compton, but that was not a recommendation. David thought at the time he had the authority to do it.

at the malls. During 2006, after the Village Mall was purchased by Howard and Mills, David learned from Jeff Mills that the mall's financial situation was poor. When asked what Howard and Mills, Inc.'s role was in the Village Mall after the 2006 purchase, David could not answer the question. He stated "I don't think they had a role." Basically, Howard and Mills, as mall owners, just wanted David Mills to make sure the property was running smoothly for their investors.

David testified that he believed Plaintiff was employed by Robert Mills of RM Realty. David was never Plaintiff's direct supervisor and had no part in his hiring. He did not even know what Plaintiff's official title was. David assumed that Plaintiff's job duties included making sure others in the mall were doing their jobs properly. In November 2006, after speaking with Robert Mills, Cindy Compton, and Lisa Massengil (Lisa Massengil had been Marketing Director at the mall), David came to the conclusion that Plaintiff was not doing his job. David's job at the mall was to focus on why the mall was not getting spaces leased out and expenses down. David testified that when something happened at the mall that needed to be addressed, such as issues with security guards, Plaintiff did not address and it and did not seem motivated in doing things to enhance the property. David was of the opinion that Plaintiff was not doing his job correctly and that Plaintiff was "just milking it and skating by until he could get retirement."

Based on a discussion he had with Robert Mills, David determined that Massengil could handle Plaintiff's job of General Manager. Robert Mills and RM Realty directed the management of the mall. Robert Mills told David that Plaintiff controlled mall expenses. Robert Mills sent an e-mail out to Brett Howard, Jeff Mills, David Mills, and Jason Linde saying that he thought Plaintiff had controlled expenses in 2006. Robert Mills told David that Plaintiff was planning on retiring. David would not have told the mall ownership about Plaintiff's desire for

retirement, however he did indirectly tell Jeff Mills and Brett Howard about it. Robert and David corresponded in December 2006 concerning Plaintiff's reaction when told he would not be getting a bonus.

Jason Linde, who worked as an independent contractor for Howard and Mills, sent an e-mail on December 13, 2006, to Robert Mills, discussing how Lisa Massengil will step up and take over Plaintiff's job once Plaintiff retires. David Mills made the recommendation, after discussing it with Jeff Mills and Brett Howard, that Plaintiff should be terminated. Robert Mills did not have to follow David's recommendation to fire Plaintiff, however. David Mills sent an email to Plaintiff telling him he was fired.

Robert Mills Deposition Testimony and Affidavit

**Deposition**

Robert Mills is the founder and president of RM Realty Group, Inc., which he established in 2004. RM Realty employs just two people, Robert Mills himself and another employee. RM Realty manages properties for commercial real estate. It manages around twelve properties. Before founding RM Realty in 2004, Robert was the Chief Executive Officer of Amerishop, and was involved in the managing of the Village Mall, which was owned by Corvest at the time. Amerishop "[oversaw] the accounting of the financial side" and also oversaw the asset physical plant and equipment side. Amerishop was responsible for the entire operation of the mall for Corvest. By December 2005 RM Realty was managing the mall for Corvest. Corvest then sold out to Bullhead in December 2005. The employees of the mall, including Plaintiff, were employees of Corvest. Howard and Mills were the new owners of the mall[4], and Robert reported

---

[4]Robert Mills testified that the new owners of the mall were Howard and Mills in consortium with a group called "Bullhead." It is not clear if Howard and Mills and Bullhead were separate entities doing business together or were different parts of the same entity. Robert

to Jason Linde, who was his contact at Howard and Mills. Robert maintained full authority over the mall employees from December 2005 to January 2007, with approval from Jason Linde. Robert also dealt with David Mills and Brett Howard.

Robert would get input on dealing with mall employees from both Linde and Howard and Mills. Corvest continued to pay the checks to employees, however. The Village Mall had anywhere from 12 to 18 employees, some of whom were part-time and depending on the time of year. All of those employees were employed by Corvest and managed by either RM Realty and before that Amerishop. Plaintiff would be in charge of hiring employees and had to get approval from RM Realty to hire or fire. Plaintiff began reporting to Robert sometime around 2002 or 2003. Jason Linde from Howard and Mills discussed his concerns with Robert about whether Plaintiff was the right person for the job. Much of the concern had to do with Plaintiff, in late 2006, attaining construction bids for a Famous Label store in the mall.

Robert testified that the ultimate decision to fire Plaintiff was made by David Mills. When Plaintiff was fired in January 2007, Robert felt that Howard and Mills was forming its own management company to manage the mall and it was only a matter of time before RM Realty was displaced. Robert was upset about Howard and Mills's decision to fire Plaintiff, and during conversations with David Mills and Brett Howard, told them that technically Plaintiff was Corvest's employee. The Howard and Mills people responded that they were terminating RM Realty's contract, that Plaintiff had become "their"[5] employee, and so they terminated Plaintiff.

**Affidavit**

---

Mills testified that her does not know what the relationship was between Howard and Mills and Bullhead.

[5] By "their" it is not clear if Robert Mills meant the Howard and Mills people were referring to RM Realty or Howard and Mills.

6

Included with Defendant's Motion for Summary Judgment is the Affidavit of Robert Mills. In the affidavit, Robert states that RM Realty has never been known as Corvest Property Trust and it has never employed Plaintiff. It never owned real estate or had any ownership interest in the Village Mall. Robert was, however, the vice president of Corvest Property Trust from 1999 through 2007, in which position he was responsible for the management of the day to day activities of the mall, including but not limited to payroll, accounting, and collecting cash receipts from the tenants. He reviewed the records of Corvest and found the following:

1) that in 2006 there were 12 employees or more who worked for at least one day a week for 20 weeks or more of the year;

2) that in 2006 there were 7 employees who worked for at least one day a week for less than 20 weeks;

3) that for the 2006 tax year Corvest filed 19 W-2s;

4) for the 2007 tax year Corvest had only 17 employees for that year that worked less than 20 weeks;

5) Plaintiff was a Corvest employee until he was fired in 2007 and never received his payroll or W-2s from RM Realty or any other group for his employment at the mall.

Robert also averred that he never had any interest, legal or otherwise, in Howard and Mills, Inc., or B&G Management Company.

Brett Howard's Affidavits

Attached to Defendants' Motion for Summary Judgment are two affidavits of Brett Howard. In the first affidavit, Howard states that he is the president of B&G Management Company, which formed on January 22, 2007, after Plaintiff was terminated. Further, Plaintiff never worked for B&G and B&G has never had any ownership interest in the Village Mall in

7

Danville.

The second affidavit of Howard states that he is the president of Howard and Mills, Inc., and has been since 1999. He reviewed all the employment records for the year 2006 and found that Howard and Mills, Inc., had only 8 employees for the year and only 9 employees for 2007. He also states that Howard and Mills never employed Plaintiff in any fashion and had no ownership interest in the Village Mall in Danville.

## MOTION FOR SUMMARY JUDGMENT

Defendants' main argument on summary judgment is that Plaintiff fails to meet the threshold requirement under the ADEA that his employer had 20 or more employees for each working day in each of twenty or more calendar weeks in the current or proceeding year. Defendants contend that RM Realty Group, Howard and Mills, Inc., and B&G Management Company never employed Plaintiff. Plaintiff was only employed by Corvest Property Trust, and Corvest had less than 20 employees in the calendar years 2006 and 2007.

Plaintiff counters that questions of fact exist as to whether RM Realty and Howard and Mills could be considered Plaintiff's joint employers, and whether each of the Defendants should be considered employers under the ADEA as there are circumstances where courts should combine the aggregate number of employees to meet the 20 employee requirement. Further, Plaintiff argues Defendants have waived any summary judgment position as to the ERISA allegations in Count II of the Complaint, as "they make only a one sentence, perfunctory argument on the Count, misstate the law and legal position Plaintiff even makes, and cite not one fact to support summary judgment on Count II."[6]

---

[6]The court agrees with Plaintiff that Defendants have not, outside of a cursory citing of the summary judgment standard with respect to ERISA cases, made any sustained argument as to why summary judgment should be granted on Count II of the ERISA claim. The court will not

8

ANALYSIS

Under Federal Rule of Civil Procedure 56(b), "a party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002).

Defendants' Amended Motion for Summary Judgment (#38) hinges on the ADEA's requirement that a party, to qualify as an employer under the Act, must employ Plaintiff and must employ twenty or more people for each working day in each of twenty or more calendar weeks in the current or proceeding calendar year. 29 U.S.C. § 630(b). One of the methods for determining whether an employee-employer relationship exists between two parties is the "payroll method," in which the court looks to whether the individual in question appears on the employer's payroll. Walters v. Metropolitan Educational Enterprises, Inc., 519 U.S. 202, 211 (1997). It is undisputed that Plaintiff received his paychecks from Corvest Property Trust, so

---

grant summary judgment on Count II.

Corvest is clearly at least one of Plaintiff's employers. Defendants contend that the analysis stops there, and, as Corvest employed at most 18 people in the relevant time periods, Plaintiff has not met his threshold requirement of 20 employees working in each day in 20 calendar weeks, and they are entitled to summary judgment.

Plaintiff counters, however, that the analysis does not end there, because under the "joint employer" theory, all Defendants jointly employed Plaintiff through direction and control over his employment. The Seventh Circuit has held that the too-few employee exemption is vitiated in three instances by the presence of an affiliated employer: (1) where the traditional conditions being present for piercing the veil to allow a creditor of one corporation to sue a parent or other affiliate; (2) where an enterprise might split itself up into a number of corporations, each with fewer than the statutory minimum number of employees, for the express purpose of avoiding liability under the discrimination laws; and (3) where the parent corporation might have directed the discriminatory act, practice, or policy of which the employee of its subsidiary was complaining. Papa v. Katy Industries, Inc., 166 F.3d 937, 940-41 (7th Cir. 1999). In other employment law context, such as the Family Medical Leave Act (FMLA) (29 U.S.C. § 2601), a joint employer relationship exists when each alleged employer exercises control over the working conditions of an employee. Moldenhauer v. Tazewell-Pekin Consolidated Communications Center, 536 F.3d 640, 644 (7th Cir. 2008). Some factors to consider are if the alleged employer (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of payment; (3) determined the rate and method of payment; and (4) maintained employment records. Moldenhauer, 536 F.3d at 644.

Under the ADEA, someone is considered an employee, and not an independent contractor, based on five factors: (1) the extent of the employer's control and supervision over

10

the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the workplace; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations. Equal Employment Opportunity Commission v. North Knox School Corp., 154 F.3d 744, 747 (7th Cir. 1998). The most significant factor is the amount of control or supervision exercised over the person. North Knox, 154 F.3d at 747.

It is true that the Seventh Circuit has not yet appeared to directly address the joint employer concept in an ADEA case where the two employers in question are not in a employer/temporary employment agency or parent corporation/subsidiary corporation relationship. See Piano v. Ameritech/SBC, 2003 WL 260337, *5 (N.D. Ill. 2003). In the instant case, it is not quite clear from the filings, affidavits, and deposition testimony just what kind of relationship existed between Howard and Mills, RM Realty, and Corvest Trust Property. Nor is the relationship of RM Realty and Howard and Mills toward Plaintiff precisely clear. However, employing the analyses laid out in Seventh Circuit cases such as Papa and North Knox, the court will examine whether the discriminatory act was carried out by RM Realty at the direction of Howard and Mills and whether Plaintiff could have qualified as an employee not just of Corvest, but also of RM Realty or Howard and Mills. Further, although it addressed the FMLA and not the ADEA, the factors established in Moldenhauer for determining the existence of a joint employer relationship may also be instructive.

First, with respect to RM Realty, the evidence of record is conflicting as to whether Plaintiff was an employee of RM Realty. The affidavit of Robert Mills states, unequivocally, that RM Realty had no relationship with Corvest, had no interest or ownership in the Village

11

Mall, and never employed Plaintiff. However, the affidavit does note that Robert served as vice president of Corvest from 1999 to 2007. Further, in Robert's own deposition, he testified that by December 2005 RM Realty was "managing" the mall for Corvest. He also testified that in between December 2005 and January 2007 he "maintained full authority" over the mall employees. He also stated Plaintiff was in charge of hiring and firing mall employees, but did have to get approval from RM Realty to hire or fire. Plaintiff testified that RM Realty owned and maintained Corvest Property Trust, and there is no dispute that Plaintiff was an employee of Corvest. Also, Plaintiff claims that when he received the e-mail from David Mills stating he was fired, Robert called Plaintiff and told him not to worry because Plaintiff was Robert's employee. The testimony of David Mills also shows that David believed Plaintiff to be an employee of Robert's.

There is testimony that (1) Plaintiff was RM Realty's employee; (2) RM Realty exercised some control or supervision of Plaintiff's work (such as Plaintiff getting final approval on hiring/firing decisions from Robert Mills); (3) that RM Realty could fire Plaintiff; and (4) that RM Realty owned Corvest (Robert did acknowledge he was Corvest's vice president). See North Knox, 154 F.3d at 747; Moldenhauer, 536 F.3d at 644. Therefore, while the evidence is not conclusive, there exists enough evidence so as to find a question of material fact as to whether Plaintiff was an employee of RM Realty.

Second, regarding Howard and Mills relationship with Plaintiff, the record is again conflicting. While the affidavits of Brett Howard state in no uncertain terms that Howard and Mills never employed Plaintiff and never had an ownership interest in the Village Mall, that is at odds with statements made by both David Mills (a Howard and Mills employee) and Robert Mills. David testified that Howard and Mills "owned" the mall and they "purchased" it in 2005.

At other times during the deposition, however, David stated that he was not sure what role Howard and Mills played in the mall's upkeep.

Further, there is evidence that David, as a representative of Howard and Mills, did exercise some type of control or supervision over Plaintiff and other mall employees. This control and/or supervision consisted of: (1) "recommending" that Robert Mills not give Plaintiff a bonus (and it was not given); (2) giving bonuses to Lisa Massengil and Cindy Compton; (3) discussing his concerns about Plaintiff's job performance and Plaintiff's possible termination with Robert Mills; (4) discussing Plaintiff's desire for retirement with Jeff Mills and Brett Howard, the owners of Howard and Mills; and (5) himself sending Plaintiff the e-mail on January 4, 2007, that notified Plaintiff he was being terminated from his position at the mall. All of these pieces of evidence suggest there is at least some question of material fact as to whether Plaintiff can be considered an employee of Howard and Mills, in that Howard and Mills appears to have exercised some control and/or supervision of Plaintiff in his job at the Village Mall. See North Knox, 154 F.3d at 747.

Finally, there is the question of the relationship between Howard and Mills, RM Realty, and Corvest Property Trust. The affidavit of Robert Mills states that RM Realty has never been known as Corvest Property Trust and never had an ownership interest in the Village Mall. Nor has RM Realty had any interest, legal or otherwise in Howard and Mills or B&G Management. Brett Howard's affidavits also claim no ownership in the Village Mall by either Howard and Mills or B&G.

However, deposition testimony reveals that there was a working relationship between employees of Howard and Mills (Jason Linde and David Mills) with RM Realty's Robert Mills on issues such as the firing of employees, whether to give them bonuses, and how the mall was

13

being run. There is at least a question of material fact as to whether this close cooperation on terminating an employee between Howard and Mills and RM Realty is akin to a parent corporation directing a subsidiary to commit a discriminatory act. See Moldenhauer, 536 F.3d at 647; Papa, 166 F.3d at 941. Whatever the relationship between the companies, it is clear that they did work together with regard to Plaintiff's employment and its eventual termination. Further, there is also a question as to the Corvest Property Trust/RM Realty relationship, as Robert Mills served as Corvest vice president up until 2007. There is a question of material fact as to whether Corvest, Howard and Mills, and RM Realty are joint employers of Plaintiff.

Thus, as the court has found a question of material fact as to: (1) whether RM Realty can be considered an employer of Plaintiff; (2) whether Howard and Mills can be considered an employer of Plaintiff; and (3) whether Corvest, Howard and Mills, and RM Realty can be considered joint employers of Plaintiff, the court will add the workforce of these three entities[7] together to see if they meet the threshold number of employers to qualify as an employer under the ADEA. According to the affidavit of Robert Mills, in 2006 Corvest had anywhere at least 12 employees who would qualify as employees under the ADEA. According to Robert Mills, RM Realty had only 1-2 employees for 2006 who would qualify under the ADEA(maybe just one). According to Brett Howard's affidavit, Howard and Mills had 8 employees for 2006 who would qualify as employees under the ADEA. Adding those three employers together comes up with a total of at least 21 employees, which would qualify Defendants as an employer under the ADEA. As the court has found there is a question of material fact as to whether Corvest, Howard and Mills, and RM Realty can be considered Plaintiff's joint employer, and they have a total of at

---

[7]The court will not consider B&G Management, at this stage, as an employer of Plaintiff, as it seems not to have come into existence until after Plaintiff's January 4, 2007, termination date.

least 21 employees for 2006, they would meet the threshold level to qualify as an employer under the ADEA and submit them to the jurisdiction of federal discrimination laws.  Therefore, Defendants' Amended Motion for Summary Judgment must be DENIED.

    IT IS THEREFORE ORDERED:

    (1) Defendant's Motion for Summary Judgment [37] has been superseded by Defendants' Amended Motion for Summary Judgment [38] and is no longer pending.

    (2) Defendants' Amended Motion for Summary Judgment [38] is DENIED.

    (3) This case is set for a telephone status conference on Tuesday, June 22, 2010, at 9:00 am.

    ENTERED this 4th day of June, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE